UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | ) |
| V. | ) Crim. No. 1:25-cr-10314-DJC |
| JOSE PEREZ | ) |

**MOTION TO RECONSIDER DETENTION**

      The defendant humbly prays the Honorable Massachusetts Federal Court to grant a detention hearing for the defendant, where the government will need to produce a special agent to be cross examined by defense, The affidavit written by Special Agent Ryan P. Glynn of the Drug Enforcement Administration (DEA) on this matter, which purports itself to be an *"Affidavit in support of an application for a criminal complaint",* omits key facts in lieu of a change in circumstances, that make said affidavit not entirely accurate or forthwith with what actually was allegedly taking place on June 11th, 2025. See this case involves DEA agents, that were essentially operating independently, they were clandestine, and they were the ones that were forcing themselves on the defendant. Through constant calling and texts being sent to the defendant, per their own affidavit, but not in the exact manner the affidavit states, but rather by them purporting to be able to bring his hard earned money, safely across the border. The defendant's entire immediate family is here in the Boston Area, the defendant has lived in Massachusetts for 30 plus years and the defendant's only home is here in Brockton, Ma, yet like many immigrants that have been americanized, the defendant is a permanent resident, and was simply seeking to diversify his portfolio as a businessman, by sending legally earned and taxed money, back to his birth country of El Salvador. UC 1 and UC 2, identifications are unknown, yet they never give any real description of how they come to meet the defendant, only that he was recommended to them and yet, for what purpose? It is a reality that the government has threatened charging the defendant with money laundering in this case, yet makes no mention of any such allegations inside said special agent's affidavit. If any thing the government suggests in said affidavit, that the defendant was going there to buy sugar and that the $150k, that was marked $150k was for said sugar and not for the transfer of money. Well, if that were to be true, then why is the amount more then the $80k-$90k initially mentioned in the affidavit, if the Government now is wanting to charge the defendant with money laundering, then the story written about the defendant going there to buy drugs, that turned out to be sugar would be false. And so the Honorable Massachusetts Federal Court is left with a dilemma, because the Government cannot have it both ways, Special Agents cannot concoct a scheme to arrest a defendant, that is then supported by an affidavit based on bad faith lies. A hearing should be held with said undercover officers in order to get to the bottom, of why they gave a false reporting of the events to Special Agent Glynn. Or did they collude with Special Agent Glynn in this

fabricated scheme, in order to deceive the Honorable Massachusetts Federal Court. This is the DEA; mistakes are not made, unless they are on purpose and so the reality is that if this was some alleged gratuitous throwing of sugar, into the ford explorer that the defendant was driving, which was entirely a last minute attempt to set up and inculpate the defendant, with an orchestrated reverse, that was done without the defendant's knowledge or intent of the defendant to participate. Furthermore, UC1 and UC2 are percipient witnesses by themselves to the specific conversations regarding the transfer of money, ie: them being able to allegedly ship the defendant's money across the boarder and the various alleged times, they had already shipped said money for the defendant during 2025 and so if the $150k was money, that was to be delivered across the boarder and not for this fabricated drug possession with intent to distribute scheme, then that goes to the strength of the Government's case in chief and should be a change in circumstance, that favors bail conditions for the defendant.

     In a case, where there is no violence and only bags of sugar at play, the prosecution at the defendant's initial arraignment argued that the defendant was too dangerous, because of the defendant's ability to purchase narcotics in the future, and some alleged flight risk, yet the Government has zero travel records of the defendant ever flying out of the country, in the last 10 years or more, and so the defendant who resides in Massachusetts and is not a flight risk, due to the amount of property and business he owns in Massachusetts, should now be seen under different circumstances, due to the lack in strength in the Government's case. The defendant never purchased any of the alleged bags of sugar on 6/11/25, which were thrown gratuitously, into his vehicle by rouge DEA Undercover Agents. Because, if the reality of the situation, was that the defendant was simply trying to allegedly move his money and not buy drugs, then the teeth of the prosecutions initial argument are nullified by the new change in circumstance, where the defendant was not engaging in drug trafficking and therefore said prosecutors argument would not have had the same strength if the Court would have known that the real reason the defendant, was there was to secure the transfer of his money, said money was to be allegedly delivered across the boarder in full minus said 13.5% fee that the affiant now purports to be the price of an alleged kilo.

     There are no text messages in this case, that corroborate or show that the defendant was ever trying to purchase kilos of cocaine, from the two undercover officers, in the light most favorable to the Government, the only evidence against this defendant is that, said undercover officers were the ones that were constantly trying to entrap the defendant, when he only wanted to allegedly secure the transfer of his hard earned money and was completely taken aback by the bag being thrown into his truck, a bag of sugar. The Government fails to write in their affidavit that UC1 and UC2 had already successfully sent back several money order shipments, and their services were recommended to the defendant, this is no where in the affidavit for criminal complaint and goes to the honesty and integrity of this investigation and should bear some significance in a new detention hearing for a defendant with no record of convictions, where now, there is a change in circumstances in the Government's case in chief, where they would go to an latino immigrant, like the defendant in this case and state that for a fee of 13.5%, they could move said currency across the border and deliver said currency to a person, entrusted to pick up

the currency in their target's home country, this is backed by the fact that one of the undercover officers took with him a signed dollar bill from the 6/11/25 shipment, on that day inside the explorer, said *DOLLAR BILL* would have only been signed, photographed, and taken so that the person picking up the large amount of currency in the foreign country, would have the ability to show the photograph of the bill to the person delivering the money, who would need to bring the bill with them, this person would have to show the signed bill to the person picking up the money, from the sender.

The defendant was entrapped, because it was the two undercover officers that pursued the defendant, it is not known if either of these two undercover officers, truly were undercover, as the Court is aware, their is a history of law enforcement, using their uniform to do crime and so the idea that the DEA in Massachusetts is playing both sides, through their rouge UC agents with this amount of money, is not a far fetched idea in the least, *specifically if you look at the price of the alleged kilo, which the affidavit claims is $13,500. $13.5k times 15 kilos equals $202,500.00, not $150,000.* The Affidavit does not even speak about this discrepancy of *Fifty Two thousand dollars*. Furthermore, the affidavit does not speak to any of the alleged business, that this innocent defendant was actually there for, regarding the transfer of said currency, and for the purposes of this motion to reconsider detention, for the business, which the defendant was actually their on June 11th, 2025 to deliver money, that would then be returned, minus a percentage in the senders country of origin to pay for land investments and not to purchase narcotics, that were simply gratuitously thrown into the defendant's vehicle, after the alleged money deal was done, essentially deliberately inducing the sham drugs onto the defendant by the undercover officers, without any predisposition or plan, just a simple, extra to the deal, a cherry on top, of which the defendant's suv was simultaneously convened on by awaiting law enforcement officers. Hence, this entrapment was only done for the purpose of arresting the defendant, for attempted drug possession, yet there were no drugs alleged to have been possessed, only sugar. This throwing of the free bag of sugar into the defendant's suv and then the bad faith curtailing of *S.A. Glynn affidavit* to match and back up the orchestrated and fabricated account, should bear some significance on both the strength of the case and the Government's argument for dangerousness, for a person who was simply trying to allegedly send money, back to his native land and who owns several commercial and residential properties in the local area and owns an Auto Body Shop, where he works every day as a laborer and is a father, who has lived full time in Massachusetts for over 30 plus years and is not some sophisticated trafficker, since if you believe the affidavit, he would fallen for sugar, which was only done to set up an unknowing and unwilling defendant, without any predisposition of the alleged sugar, that was to be thrown in the ford explorer as a gratuity. Said UC2 tainted his actual investigation by throwing bags of sugar into the defendant's truck and making it seem as if the defendant was there to buy drugs, then took another substantial step in furtherance of the Government's fraud by fabricating their affidavit to make it seem, that the defendant was their to purchase narcotics, instead of being their to allegedly move money, in order to be able to arrest him and impose a more substantial mandatory minimum on said defendant in bad faith. Said injustice should not be allowed to occur, because as the court knows it will lead to further injustices, as said UC Agents will believe that they are allowed to lie under oath, without legal

repercussions. Said investigators should not be rewarded, with lying to the Honorable Court and making it believe that the defendant was their to buy drugs, when he was absolutely not their for that purpose and therefore had no pre-disposition as to UC2's intentional inducement and bad acts, that were originated and designed only by said undercover officers and their team to achieve the Government's purpose of prosecution. *"Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Jacobson v. United States, 503 U.S. 540, 548 (1992). A valid entrapment defense has two related elements: (1) government inducement of the crime, and (2) the defendant's lack of predisposition to engage in the criminal conduct. Mathews v. United States, 485 U.S. 58, 63 (1988)."*

      The Honorable Massachusetts Federal Court knows that members of law enforcement especially federal law enforcement officers are sworn under oath in federal affidavits in support of a criminal complaint to tell and write the truth and so it was either S.A. P. Glynn, who took it upon himself to draft said affidavit or he did so with the help of UC 1 and UC 2, that should now be brought into court and be allowed to be cross examined at said detention hearing in order to get to the truth of why the affidavit speaks of the defendant being their to buy drugs, then yet also talks about the defendant, receiving 40 kilos the next day by his own source, this doesn't make sense, why would a person need to buy drugs, if they were receiving a much bigger shipment the next day? This looks to be gratuitous. And after signing the *DOLLAR BILL*, UC1 and UC2 left the defendant's ford explorer, one left with the money and the other went to grab a bag of sugar, because they essentially were trying to induce the defendant, while at the same time taking his money, through the last minute tossing of the sugar, into the truck of the defendant to set him up, by proceeding to immediately arrest the defendant. Said investigators premeditated their entrapment, by having investigators ready to bust the defendant for sham cocaine in some sort of last minute reverse, that doesn't add up with the affidavit of S.A. P. Glynn or with the facts of the case, of which their are issues both in sentencing someone for the alleged unknown possession of sugar, with no intent of a person to either buy said sugar or having any knowledge that said UC2 would return to his Ford Explorer and throw a bag of sugar into the truck, The charge of attempted possession with intent to distribute five kilograms or more of cocaine, provides for a mandatory minimum of 10 years, yet the attempted possession has to be real cocaine, because the attempted possession of sugar, is not the same as being arrested with real kilograms of cocaine, if that were the case this would have been a much stronger case, for the Government, but the fact that the actual attempted possession statue, does not include any language in regards to sham cocaine, further highlights the weakness in the Government's case at jury trial and so the defendant was not left with many options in a broad day light commercialized setting, and if their is no body camera visual recording of the defendant hiding the alleged bags of sugar, then that also goes to the strength of the Government's case at jury trial, where they would need to produce said undercover officers and could essentially blow all of their current and active investigations, per the Government's own protective order in this case and since, per *Brady* if the defendant has a good faith basis to believe that said officers and agents are lying to the Honorable Federal Court about what actually transpired on 6/11/25, then the defendant should not be held responsible for the actions of a rouge undercover officer, who

threw sugar into the pickup truck and then arrested the defendant and the defendant being in fear and in shock, did what any rational person it that situation, would do if they thought they were being allowed to send money across the boarder by the Government, defense points to several key points in *S.A. R. Glynn's affidavit* that are outliers in a reverse narcotics bust, which with the sham cocaine, this purported to be by *Special Agent Glynn*, who unless he was one of the two undercover officers, was not actually there, and would have had to have been told said information in the affidavit. And since said alleged reverse, was not recorded, as it should have been. That also should go to the strength of the Government's case. In any event, it has not yet been disclosed, if said undercover officers used their official capacities, into making the defendant think, that they could provide a courier service, under official color for his money to get back to his country of origin, not for the defendant to buy drugs from them and then at the last minute after securing the currency, they set up the defendant with an alleged last minute reverse, orchestrated by the two Undercover Officers UC1 and UC2. *Since both undercover officers in this case are now "one material witness to the transaction who could controvert, explain, or amplify the testimony of law enforcement officers" their testimony and disclosure as percipient witnesses is exculpatory and whose disclosures become crucial to the defendant, being properly prepared for jury trial. Roviaro v. United States, 353 U.S. 53 (1957)*

      Defense prays the Honorable Massachusetts federal Court to order a hearing in order for a bail of $25,000 to be set and granted, so that the defendant can be afforded his due process rights, said defendant is 47 years old and has been a long time resident, since 2011 of Brockton, Massachusetts, where he lives with his sixteen year old son, in a home he owns. He is the sole caretaker of his son, who is an American Citizen and is in High School and suffers from Aspergers and acute intellectual difficulties, since his mother and the defendant's wife who suffered from Lupus, died during Covid-19 of acute respiratory failure. The defendant has since, become the sole caretaker of their son and was not by any means on June 11th, 2025 going to do a drug purchase, the defendant was merely an alleged courier, who was dropping off money in order for that money to be sent back home to his native land. This is something that is common in the Latino Community, because many immigrants are still taking care of their families investments in their native homeland and since the defendant was invited by the two special agents, that had been referred to him as having the ability to move legal money of which taxes were paid on, from the Boston area to his home country of El Salvador, said money would then be used for legal construction investments in the defendant's country of origin. The defendant is the sole provider for his son and is his only care taker, per the affidavit in this case, the investigators even depicted in said affidavit of the defendant, bringing his young son to school each and every morning, before going to his Auto Body Shop in Dorchester, Ma where the defendant has worked for the last Twenty Five plus years, as an auto body technician and business owner. The defendant has absolutely no criminal convictions and in this case has no history of violence. The defendant has never been deported and is a legal green card holder and permanent resident. In the light most favorable to the Government, the defendant was entrapped and set up, and had a bag full of sugar dumped into his truck, the defendant had no predisposed knowledge that said sham narcotics were going to be thrown into his explorer on 6/11/25, because the defendant was not there to purchase narcotics, and it was only the two undercover

agents, who intentionally designed the scheme and forced said sugar onto the defendant, by dropping it off without letting him know. Because, if it was a real drug deal, then why didn't they come to the explorer with the sugar in their hands to begin with, wouldn't the defendant have wanted to test the product before accepting it, since so much money per the Government's fictitious affidavit, was being handed over to purchase the alleged sugar. In the Government's affidavit that keeps the undercover agents actual names hidden from the defendant, it does not state that the agent who walks back into the truck and leaves the bag of sugar inside the truck, ever asks if the defendant wants to try said narcotics, at no point is there ever any discussion of a sample of said sugar, this was not a real drug purchase, this was a currency deposit for the relocation of funds, because at no point did the agent ever say to the defendant, that he owed them another $52 thousand dollars, it was the agent's who took it upon themselves to throw unwanted sugar into the ford explorer of the defendant and then curtail the affidavit to fit their fictional story, and then said explorer was immediately rushed by law enforcement, who were part of the undercover officers design and plan to stake out the truck and arrest the defendant and so this was a premeditated sting operation by the undercover officers, of which a motion for percipient witness identification via *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) is forth coming, and if the government does not want to disclose the identifications of their clandestine agents, who are more then likely still working on other DEA cases, then that too goes to the lack of strength in the Government's case, because said disclosure is exculpatory and mandatory per *Brady*. The defendant, further stipulates to being placed on a GPS bracelet, and to remain within the Commonwealth at his home in Brockton, MA during the pendency of said case. Under this new change in circumstance, the defendant should be released, as he did not try to run on said date of arrest, nor did he do anything that would show that he would not be able to comply with court orders, nor has he given any reason for continued incarceration in the last 6 plus months of detention, the defendant is not dangerous and said conditions would allow for the defendant to be present at all future court hearings and would allow for the defendant to care for his sickened child. *United States of America v. Christopher Rainieri*

Respectfully submitted,

By His Attorney,

/s/ Carlos A. Apostle, Esquire

Carlos A. Apostle, Esquire

Apostle Law

One McKinley Square

Boston, MA 02109

BBO # 698129

**CERTIFICATE OF SERVICE**

I hereby certify that I am new counsel for the defendant and have caused a copy of this pleading to be served electronically through the ECF system to all parties herein this 5th day of December 2026, and that I provided the defendant a copy of this motion on said date.

/s/ Carlos A. Apostle, Esquire

Carlos A. Apostle, Esquire